# JOHN V. FARWELL *et al.*
## *v.*
## THE CITY OF CHICAGO.

1. LICENSING *public carriers in cities—one using vehicles in the course of his ordinary business.** The city of Chicago, by its charter, was authorized to license, regulate and suppress hackmen, draymen, porters, carters, etc., and, under the charter, the city adopted an ordinance requiring all persons who shall hire out, keep or use for hire, or cause to be kept or used for hire, for the carrying or conveying of persons, or

---

*See *Joyce* v. *City of East St. Louis,* 77 Ill. 156.

any article or thing whatever, any dray, cart, wagon, or other vehicle, to procure a license therefor, and imposing a penalty for a failure to comply with the provisions of the ordinance. The defendants were wholesale merchants, and kept and used wagons for the purpose of transferring goods sold by them to the depot or wharf for shipment, and charged to and received from the persons to whom the goods were sold and shipped, a sum of money for so transferring the goods: *Held*, that their wagons were not used for hire, in the sense of the ordinance, and that they were not hackmen, draymen, porters or carters, within the meaning of the charter and ordinance.

2. The spirit of the ordinance is, to bring the class of carriers therein named under the police regulations of the city. It is designed to operate upon those who hold themselves out as common carriers in the city for hire, and to so regulate them as to prevent extortion, imposition and wrong to strangers and others compelled to employ them, in having their persons or property carried from one part of the city to another. This is a rightful exercise of the police power.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

This was a suit, brought by The City of Chicago against the appellants, to recover a penalty for a violation of a city ordinance. The ordinance, so far as applicable to the case, is given in the opinion of the court.

The appellants were wholesale merchants in the city of Chicago, and the owners of twelve two-horse wagons and teams, driven by drivers employed by appellants by the month, at fixed wages. The teams and wagons were used by the appellants in conveying their own goods from the depots to their store or warehouse in the city, and also in conveying goods sold by them to the various depots in the city, for the purpose of shipment to their customers, and for so conveying the goods sold by them, they charged and received from the purchasers cartage.

Messrs. HITCHCOCK & DUPEE, for the appellants.

Mr. EGBERT JAMIESON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The forfeiture, in this case, is claimed under this provision of the city charter :

"To license, regulate and suppress hackmen, draymen, carters, porters, omnibus drivers, cabmen, carmen, and all others, whether in the permanent employment of any individual, firm or corporation, or otherwise, who may pursue like occupations, with or without vehicles, and prescribe their compensation."

And this ordinance was adopted under the charter:

"Sec. 1.   No person or persons shall hire out, keep or use for hire, or cause to be kept or used for hire, for the carrying or conveying of persons, or any article or thing whatever, within the city of Chicago, any hackney coach, cab, coach. omnibus, dray, cart, wagon, or other vehicle or vehicles, carriage or carriages, of any description or name whatever, without a license so to do."

"Sec. 5.   No person except a licensed owner shall hereafter drive any licensed hackney coach, cab, dray, cart, or other vehicle (except omnibuses on established lines), for the conveyance of passengers, or any article or thing whatever, for hire or reward, without first obtaining a license for such driver, and no such driver shall drive any other carriage or vehicle than the one for which he shall be licensed ; nor shall the owner or owners permit any person, except a licensed driver or owner, to drive any licensed carriage or vehicle owned or used by him or them ; nor shall any such owner permit any licensed driver to drive any other carriage or vehicle than the one for which he shall be licensed.

"Sec. 6.   *   *   *   *   *   *   All drays, carts, wagons and other vehicles running within said city for hire or reward, and not otherwise expressly provided for, shall be charged, for license, each, the sum of $5 per annum." * *

"Sec. 18.   Any person who shall violate any or either of the provisions of this chapter, or any section, clause, or pro-

vision of any section of this chapter, or who shall neglect or fail to comply with any or either of the requirements thereof, shall, on conviction, excepting as herein is otherwise provided. pay a fine of not less than $5 nor more than $100, and shall forfeit his license."

The question is, whether appellants, by keeping their own wagons, and handling their own goods from the depot and wharf to their store, and goods sold by them to their customers to the depot and wharf for shipment, and for this latter service charging to their customers a small sum for compensation, made them hackmen, draymen, porters or carters within the meaning of the charter and ordinances. We think they are not within the letter or spirit of either. Such is manifestly not their occupation or business, either in whole or in part. What is done by them is in the regular course of their business as wholesale merchants. They do not ply the business of draymen or cartmen—they only deliver goods sold by themselves at the depot or wharf, for shipment to their customers. They do not perform such duty for any other persons. They received no other goods or property to be carted or carried for hire, and neither solicited nor received such. Their wagons were not used for hire, in the sense of the ordinance. They have not so acted as to become common carriers, nor could they be compelled to carry for any one.

The spirit of the ordinance is, to bring the class of carriers therein named under the police regulations of the city. It is designed to operate upon those who hold themselves out as common carriers in the city for hire, and to so regulate them as to prevent extortion, imposition and wrong to strangers and others compelled to employ them, in having their property or persons carried from one part of the city to another. This is a rightful exercise of the police power. Cooley Const. Lim. 201. And it is a power that has, so far as our researches have extended, not been questioned. Were it not exercised, strangers visiting or passing through the city would be at the

mercy of unscrupulous and irresponsible persons plying such business.

If the purpose alone was to exercise the police power, then appellants are manifestly not within the meaning of the law, as they are not engaged in the business, so as to fall within the rule which requires its application. Appellants can not be compelled by their customers to so deliver their goods, nor can they require their customers to permit them to have them thus transported to the place of shipment. If directed by their customers, they would be obliged to have their goods carried by licensed cartmen. Hence, appellants do not have the power to extort upon or oppress their customers by unreasonable or exorbitant charges. No reason is, therefore, perceived, why the police power shall be applied to them. The views here expressed are sustained by the case of *The City of St. Louis* v. *Grone*, 46 Mo. 574. That case is similar in its principal features with this, and announces the same conclusion. That case seems to have been well considered, and we think is correct in principle.

We must, therefore, hold, that appellants did not, by the acts complained of, incur the penalty claimed by the city, and the judgment of the court below must be reversed.

*Judgment reversed.*