# Thomas H. Jones, Appellee, v. The Missouri Lumber and Mining Company, Appellant.

## Gen. No. 15,986.

1. BROKERS AND FACTORS—*what does not defeat claim for commissions.* Held, in this case, that the party claiming commissions who was not a real estate broker but was a mere middleman, that in view of his undertaking being to obtain a certain price specified by the owner, he was under no obligation to undertake to obtain a higher price and even if without the knowledge of the owner he arranged to receive commissions from both sides, he was notwithstanding entitled to recover his compensation for effecting the transaction.

2. BROKERS AND FACTORS—*what does not establish person as real estate broker required to have license.* Negotiating a single sale of real estate does not make one a real estate broker within the meaning of an ordinance requiring the obtaining of a license.

Appeal from the Superior Court of Cook county; the HON. HOMER ABBOTT, Judge, presiding.   Heard in the Branch Appellate Court at the October term, 1909.   Affirmed.   Opinion filed November 28, 1911.

SEITZ, BRYAN & WILBER, W. J. ORR and S. L. CLARK, for appellant.

N. M. JONES and GEORGE V. REYNOLDS, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

Suit was brought by appellee against appellant for the recovery of a balance claimed to be due for commissions for the procuring of a sale of 85,000 acres or thereabouts of land located in Missouri.

The case was tried before the court without a jury. There was a finding for the plaintiff, who is the appellee here, and against the appellant, and judgment upon such finding, reversal of which judgment is sought upon this appeal.

It appears from the record that the appellant was the owner of a large amount of land upon which timber had formerly stood but had been cut off in its lumber operations. This land it was very desirous of selling and had placed upon the market at the rate of $1 per acre. The appellee was the editor of a publication in the city of Chicago, and made an arrangement with the appellant under which he undertook to make a sale of 100,000 acres of the land, at a commission to be paid him of 20 cents per acre. Negotiations were had with various parties, and finally a corporation known as the Burchard-Hurlburt Investment Company was brought into negotiations with the appellant by appellee, and these negotiations resulted in a purchase by the Burchard-Hurlburt Company of about 85,000 acres of land, payment being made not in cash but in installments. Prior to the closing of the contract for this sale communications passed between the appellant and the appellee with respect to the commissions, the appellant insisting that whatever might be the result of the negotiations between the appellant and the Burchard-Hurlburt Company, there should be a complete relinquishment by the appellee of any claims whatsoever for commissions further than what should accrue from the sale. The appellee acquiesced substantially, stating in his letter, ''I am also willing to accept the commissions of twenty cents per acre, as payment to me for the sale of said lands, in such amounts as will correspond to the payments made by the purchasers of said lands to the Missouri Lumber & Mining Company.'' On the purchase price $22,000 was paid in cash, and the appellee was paid the proportion of his commission, namely $4,400. The balance of the purchase money, amounting to $63,000, was to be paid in four installments. Upon payment by the Burchard-Hurlburt Company to the appellant of each of the first three of the four delayed installments, the appellee was paid the proportion of his commission, being one-fifth

of the amount paid upon the principal. The second installment was reduced somewhat by a provision with reference to mineral lands which was incorporated in the contract. This, however, is not a subject of dispute. When the fifth and last payment was made to the appellant, the appellant declined to pay the appellee because the appellee demanded interest upon the several installments of his commission, and also insisted that he was entitled to be paid 20 cents per acre on the full 100,000 acres. Thereupon this suit was brought.

The declaration first filed in the case was based upon the claim of appellee that he was entitled to commissions on a sale of 100,000 acres. In the court below and in this court, however, he has signified his willingness to accept compensation upon the basis of the sale that was actually made, which as stated was about 85,000 acres.

Cross-errors have been filed by appellee, in which he alleged as error the refusal and failure of the court to allow him interest on the second, third and fourth installments. We think that the court properly refused to allow interest other than was allowed, being from the date the last payment of the principal was made. When it appeared that the sale to the Burchard-Hurlburt Company was not to be for cash but was to be on time, appellee, as heretofore stated, expressed his willingness to accept commissions of 20 cents per acre, "in such amounts as will correspond to the payments made by the purchasers of said land." In our opinion by the language used it was not contemplated that interest should be paid appellee on the various installments of his commission.

On behalf of the appellant it is urged that there should be a reversal of the judgment because of the fact that the appellee made a contract with a man named Simpson, who had had some relations with the Burchard Company. By this arrangement appellee was to divide his commission with Simpson. It would

also appear that it was the expectation that Simpson might receive some commission from the purchasing company, and if so he was to divide this commission with appellee. It is claimed by the appellant that this arrangement amounted to an agreement on the part of the appellee to accept commissions from both sides, and the claim was that as he was acting as agent for the appellant he had no legal right, without disclosing that fact to the appellant, to accept any commission or thing of value from the purchasers, either directly or indirectly.

On the part of the appellee it is contended that this arrangement was fully known to the appellant, and that in any event the appellee acted merely as a middleman, and that the relation between appellee and appellant was not that of principal and agent.

The appellee was not a real estate broker. The proposition made him by appellant was practically that it should receive 80 cents per acre net for its land. The appellant was not concerned in the division that the appellee might make of the 20 cents per acre. No duty was imposed upon the appellee to endeavor to obtain a higher price than that mentioned. Indeed the negotiations for the purchase between the Burchard Company and the appellant were closed directly between these companies without the intervention of the appellee; all that he did was, with Simpson, to bring the parties together. There is some evidence tending to show that it was some time after the deal between them was closed that the appellee knew of the exact amount of land purchased. During all the negotiations for a settlement prior to the bringing of the suit, the appellant made no claim of the character now sought to be interposed as a defense. The only subject of discussion was whether the appellee should be allowed commission on the full 100,000 acres, as well as interest on the commission claimed by him. Under such circumstances, in our opinion, the appellee

should be regarded as a middleman simply.   Mechem's Agency, sec. 973; O'Neill v. Sinclair, 54 Ill. App. 298.

It is asserted by appellant that this case should be governed by the law of Missouri, and there was incorporated into the record and called to our attention in argument the case of Corder v. O'Neill, 106 S. W. Rep. 10. We have read that case with care, and are of the opinion that it is not controlling in the present case. In it there was no question but that the person against whom the charge was made of taking double commissions, was acting as a broker and not as a middleman.

The next point urged upon us is that the appellee should not be allowed to recover because he was acting as a real estate broker in the city of Chicago, and as such had not complied with the ordinance requiring the taking out of a license. This point we think is fully met by the case of O'Neill v. Sinclair, *supra,* which was affirmed in the Supreme Court (153 Ill. 525). It is held in that case that negotiating a single sale of real estate does not make one a real estate broker within the meaning of the ordinance referred to.

We find no error in the record and the judgment is affirmed.

*Judgment affirmed.*