HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Connecticut Corporation, Appellant,

v.

STAUFFER CHEMICAL COMPANY, Chemagro a division of Baychem Corporation, Dethmers Manufacturing Company, and International Harvester, Appellees.

No. 83–2309.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1984.

Decided Aug. 28, 1984.

Lawrence L. Piersol, Monte R. Walz, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for appellees.

Woods, Fuller, Shultz & Smith, P.C., and Timothy J. Nimick, Sioux Falls, S.D., for appellant.

Before LAY, Chief Judge, and HEANEY and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Plaintiff Hartford Accident and Indemnity Company (Hartford) appeals from an order of the District Court[1] granting summary judgment to defendants Stauffer Chemical Company (Stauffer), Chemagro, a division of Baychem Corporation (Chemagro), Dethmers Manufacturing Company (Dethmers), and International Harvester (IH) in this action for indemnity. We affirm.

## I. FACTS

### A. The Terra Western Litigation

In 1974 Terra Western Corporation (Terra Western) marketed fertilizer, insecticides, insecticide/fertilizer applicators, and services in connection with applying fertilizer and insecticides to the crops of three South Dakota corn farmers (farmers). Chemagro and Stauffer manufactured the insecticides. The insecticide/fertilizer mixture was applied using IH planters with Dethmer farm implements.[2] Terra Western employees calibrated the application equipment used on two of the three farms. Terra Western billed the farmers for application services in connection with the package of farm products sold to them.

As a result of the application of the insecticide/fertilizer combination to the three farms in question, corn crops planted on the farms were completely lost. The corn seeds either did not germinate at all or growth was so stunted as to render the crop worthless. The farmers then refused to pay Terra Western for the services and products used in the applications. Terra Western sued the farmers for the value of the services and products and the farmers counterclaimed on five counts, including breach of implied warranty, breach of express warranty, breach of warranty of merchantability, negligence, and strict liability. The farmers' main argument at trial was

---

1. The Honorable John B. Jones, United States District Judge for the District of South Dakota.

2. The fertilizer manufacturer is not a party to this lawsuit.

that, relying on the advice of Terra Western, an insecticide/fertilizer mixture was applied to the farms in such a heavy mixture and so close to the seeds that the mixture caused injury to the seeds and prevented them from growing in a normal, healthy manner. The case went to trial but before the case was submitted to the jury, Terra Western and the farmers reached an agreement whereby the farmers would recover $270,000 in damages on their counterclaim. In return, judgment was to be entered finding only a breach of implied warranty with respect to the insecticides and farm implements manufactured by Stauffer, Chemagro, Dethmers and IH. The jury was dismissed and judgment was entered by the trial court in accord with the settlement arrived at by the parties. The judgment was paid by Hartford, which was Terra Western's insurer at the time of the events relevant to the lawsuit against the farmers.

### B. Hartford's Action for Indemnity

On November 21, 1978, Terra Western advised each of the appellees of the pending claims against Terra Western by the three farmers. These notices purported to be tenders of defense under the South Dakota Uniform Commercial Code, S.D. CODIFIED LAWS ANN. 57A–2–607(5)(a) (1980) (UCC), as to Stauffer, Chemagro and Dethmers. The letter to IH purported to "vouch them in" under a common law indemnity theory.[3] Each of the four defendants refused to join in defense of the action. After entry of judgment against Terra Western and satisfaction of that judgment by Hartford, Hartford filed this action against Stauffer, Chemagro, Dethmers, and IH for indemnity. Both Hartford and the appellees filed motions for summary judgment. A hearing on these motions was held August 22, 1983. The record before the District Court consisted of the briefs of the parties on the motion for summary judgment, the pleadings, interrogatories and the answers to those interrogatories, a series of receipts, records, and bills of sale kept by Terra Western on the transactions between Terra Western and the farmers, and the deposition of John Larson, the attorney for the farmers in the first action. On the basis of these materials, the District Court granted summary judgment in favor of the appellees. The court found that under South Dakota law, Terra Western's conduct was not simply that of a retailer, but that it involved actively combining and marketing the products of Stauffer, Chemagro and Dethmers and reselling them as a unit to the public specifically for use with IH planters, thereby placing Terra Western in the position of being a marketer/manufacturer rather than a passive conduit for goods. The court held that this active involvement on the part of Terra Western precluded it from seeking indemnity from the manufacturers either under common law indemnity or the UCC. This appeal followed.

## II. DISCUSSION

■ Summary judgment is appropriate only when there is no genuine issue of material fact for the jury to decide and the movant is entitled to judgment as a matter of law. *Diebold v. Civil Service Commission*, 611 F.2d 697, 699–700 (8th Cir.1979); FED.R.CIV.P. 56(c). In other words, there must be nothing left for the jury to decide with respect to the matters presented in the motion for summary judgment.

■ In determining whether summary judgment properly was granted, the reviewing court must examine the record as it was presented to the trial court. The facts must be viewed in the light most favorable to the party opposing the motion for summary judgment, giving that party the benefit of all favorable inferences

---

3. The UCC claim was not available against IH because Terra Western did not sell the IH product involved in the lawsuit. The UCC provisions allow a retailer to seek indemnity against a manufacturer if the retailer was in the chain of distribution of the product at issue.

which may be drawn from the record before the trial court. *St. Louis County Bank v. United States,* 674 F.2d 1207, 1209 (8th Cir.1982). After carefully reviewing the record, we conclude that the District Court properly granted summary judgment in favor of the defendants.

■ The governing substantive law in this diversity case is that of South Dakota. The District Court's opinion regarding applicable state law within its district is entitled to great deference. *Bergstrom v. Sambo's Restaurants, Inc.,* 687 F.2d 1250, 1255 (8th Cir.1982); *Associated Photographer's Inc. v. Aetna Casualty & Surety Co.,* 677 F.2d 1251, 1257 (8th Cir.1982). The District Court determined that under South Dakota law, in order to be eligible for indemnity a party must demonstrate a complete lack of contributing fault with respect to the liability-producing conduct. As the District Court stated in its Memorandum Opinion: "Indemnity is available to a party who is only technically or constructively liable to an injured party, and is subjected to vicarious liability. *Degen v. Bayman* [, 86 S.D. 598], 200 N.W.2d 134 (1972)." D.R. at 193.

■ It is clear from the undisputed deposition testimony of John Larson that Terra Western was not merely a retailer of farm products with respect to the crop treatments at issue. Terra Western was selling a "package operation" which included its own specific recommendations and services regarding the manner in which fertilizer, herbicides, and insecticides were to be applied. Larson Deposition at 8–10.[4] Fur-

ther evidence of Terra Western's active involvement in the liability producing conduct is contained in Hartford's answers to appellee Chemagro's interrogatories. Designated Record at 108–91. The bills of sale from Terra Western to the farmers indicate that Terra Western provided not only products, but services in connection with the application of fertilizer, herbicides, and insecticides to the fields in question in accordance with a formula that Terra Western prescribed.

The District Court found that Terra Western had engaged in an active marketing scheme which involved combining the products of Dethmers, Stauffer and Chemagro and presenting them as a unit. Terra Western did more than merely sell goods to consumers: it passed along its own expertise in the contribution and application of the products and charged the farmers for this knowledge. The charge for these application services ranged from $0.50 per acre to $3.50 per acre. D.R. at 122, 128, 136, 161, 162, 172 and 182. In light of the uncontroverted evidence demonstrating this fact, the grant of summary judgment for appellees was proper.

We have considered appellant's other arguments and find them to be without merit. The judgment of the District Court is affirmed.

---

4. Hartford argues that the deposition of Larson cannot be considered by this Court as it was not filed until the day of the hearing, August 22, 1983, and therefore was not part of the record of the summary judgment motions. While it is true that the District Court announced its decision from the bench on August 22, the order granting summary judgment was not filed until September 1, 1983. Thus, the deposition of Larson was before the District Court prior to entry of the order. Moreover, the deposition was referred to in oral argument by the defendants' attorneys and was taken several weeks before the hearing with full participation by Hartford's attorney. Hartford had ample opportunity to counter the effect of Larson's testimony, but chose not to do so. Larson's deposition, therefore, is properly before the Court and is uncontroverted.